Morrie Slifkin, J.
The foregoing article 78 proceeding and action were consolidated by an order of this court dated July 12, 1976 and entered July 16, 1976.
The factual background of the instant case is as follows. During the full period of discussion, the plaintiff-petitioner herein was the recipient of public assistance both for herself and her children. For a period commencing April 15, 1974 and ending on January 17, 1975, plaintiff resided at 26 Highland Avenue, Yonkers, New York. During that period of time, although receiving public assistance, plaintiff did not pay to Con Ed the bills for furnishing her with electricity at the above address which, on the latter date, totaled the sum of $339.18. Con Ed terminated service to the plaintiff-petitioner on January 17, 1975. Plaintiff-petitioner then moved to an accommodation at which she did not receive service from the defendant Con Ed. On April 30, 1975, she moved to 25 Highland Avenue, Yonkers, New York and continued to live there until the commencement of this action. Her bills for electric service for this latter period of time totaled $236.47 against which she paid $194.91, leaving a balance of $41.56 for this latter period. On October 30, 1975, Con Ed served a notice of intention to terminate service unless the arrears for both accounts were paid in full. For the first time, the plaintiff-petitioner sought the intervention of the Department of Social Services in January, 1976. Upon the demand of the petitioner-plaintiff, a fair hearing was held on March 12, 1976 pursuant to which a decision was rendered by the State Commissioner of Social Services on March 24, 1976. The record discloses that the Weschester County Commissioner of Social Services acting in accordance with the regulations of the State Department of *588 Social Services, had refused to consider an emergency grant, had acted under section 352.7(g)(5) of the regulations (18 NYCRR 352.7 [g] [5]) in agreeing to an advance grant against the arrears for utilities representing not more than four months prior to the date of the payment with a right of recoupment in equal amounts over the following 6 months. The decision of the State Commissioner after fair hearing pointed out that section 372.2 (a)(2) of the regulations directs that emergency assistance shall not be provided where such needs can be met under Part 352 of the regulations by an advance allowance. It further stated that section 131 of the Social Services Law requires it to be the obligation of each local social services agency to provide for those who are unable to maintain themselves. Upon the foregoing, the decision found that the local agency had not fulfilled its responsibility and, since the assurance of continued access to utility services is an essential element of maintenance, the local agency was directed to take those steps, in addition to its stipulation necessary to effect a continuation of utility services.
The Westchester County Commissioner under date of March 25, 1976 thereupon issued a notice of intent to change public assistance status by making a finding that petitioner-plaintiff had demonstrated an inability to handle cash and that the commissioner would thereafter pay for utilities directly to Con Ed on a vouchered basis, and eliminated the requirement of recoupment. The said notice further advised that the commissioner would pay to Con Ed $65.57 for the last four months of petitioner-plaintiff’s bill for the period October 9, 1975 to February 10, 1976.
Through the intervention of the court, utility services have been continued to the plaintiff and her children by virtue of the terms of an ex parte order issued on April 8, 1976 and a preliminary injunction requiring defendant to continue to maintain services to the plaintiff during the trial of this action by an order dated July 12, 1976.
In each of the above-entitled action and proceeding, the respective parties now move and cross-move for summary judgment.
The article 78 proceeding by petitioner Rivera, seeks a judgment (a) determining that the action of the respondent Bates as Commissioner of the Westchester County Department of Social Services (hereinafter referred to as "Bates”) authoriz *589 ing a grant of emergency assistance limited to 4 months of arrears on account of petitioner’s debt to Consolidated Edison Company Inc., (hereinafter referred to as "Con Ed”) was not in conformity with the decision rendered after a fair hearing by the office of Stephen Berger, as Commissioner of the New York State Department of Social Services (hereinafter referred to as "Berger”); (b) determining and directing that Bates issue an emergency grant of assistance pursuant to section 350-j of the Social Services Law to fully meet petitioner’s need for assistance; and (c) ordering Berger, pursuant to 18 NYCRR 358.21 to direct Bates to review other cases with similar facts for conformity with the principals and findings of his decision in this case.
Bates has served a verified answer asserting a general denial, a first affirmative defense claiming full compliance with the provisions of section 12 of the Transportation Corporations Law and of 18 NYCRR 352.7(g)(5) which are claimed to govern assistance to a person receiving public assistance to forestall a utility shutoff; a second affirmative defense that respondent Bates has complied with the regulations governing administration of public assistance to forestall a utility shutoff as prescribed by 18 NYCRR 352.7(g)(5) and 18 NYCRR Part 372; as a third affirmative defense, compliance with the terms of the fair hearing decision; a fourth affirmative defense alleging compliance with the provisions in section 12 of the Transportation Corporations Law and that Con Ed failed to comply with the requirements of that statute; as a fifth affirmative defense that the allowance for the cost of services in the four-month period immediately preceding application is in compliance with State regulations; as a sixth affirmative defense that petitioner is not entitled to a grant of emergency assistance; as a seventh affirmative defense negotiations between Bates and Con Ed to work out an efficient method of preventing cutoffs to persons who are recipients of public assistance before the four-month period has expired.
A reply was served on behalf of petitioner in effect putting in issue the affirmative defenses of Bates.
In the action instituted by Rivera against Consolidated Edison Company, Inc., plaintiff seeks a judgment (a) determining that the defendant under subdivision 2 of section 15 of the Transportation Corporations Law is required to furnish electricity to the plaintiff provided that the Department of Social Services makes prospective payment for such services directly *590 to the defendant, and (b) enjoining defendant permanently from refusing or failing to supply electric service to the plaintiff so long as the bills for such services are paid directly to the defendant by the Department of Social Services.
Defendant Con Edison’s answer interposes a general denial, a counterclaim against the plaintiff for the balance of the unpaid bills for electric services furnished to the plaintiff by the defendant, a counterclaim seeking a determination that the defendant has a right under section 15 of the Transportation Corporations Law to terminate service to the plaintiff for nonpayment of bills for services rendered and also, includes a cross complaint against the Commissioner of the New York State Department of Social Services and against the Commissioner of Westchester County Department of Social Services for a judgment (a) for the arrears owing by plaintiff to defendant, (b) determining and declaring the respective respondent commissioners to be under a duty to guarantee payment to the defendant for all electricity furnished by the defendant to the plaintiff while the plaintiff was a recipient of public assistance, (c) declaring 18 NYCRR 352.7(g)(5) to be contrary to the provisions of section 12 of the Transportation Corporations Law and to be in violation of the provisions of the Federal and New York State Constitutions, (d) declaring subdivision 2 of section 15 of the Transportation Corporations Law requires the said commissioners to pay defendant for all services rendered to the plaintiff to avoid discontinuance.
Plaintiff, in her reply to the counterclaims asserted by Con Ed interposes a general denial, an affirmative defense that the right of Con Ed to terminate service arises under subdivision 1 of section 15 of the Transportation Corporations Law and that the provisions of subdivision 2 of section 15 of the Transportation Corporations Law are an exception to the above section and that the provisions of subdivision 2 of section 15 of the Transportation Corporations Law, where the Department of Social Services has guaranteed payment, prohibits a termination of service.
Defendant Bates in his answer to the cross complaint of Con Ed interposes a general denial, an affirmative defense that neither of the commissioners is a guarantor of all utility payments due to the utility company while a recipient of public assistance continues to receive a grant of public assistance, under the provisions of section 12 of the Transportation Corporations Law; a second affirmative defense that the agree *591 ment of Bates to pay all future utility of plaintiff directly to Con Ed is in compliance with the provisions of subdivision 2 of section 15 of the Transportation Corporations Law which, under those circumstances, bars a shutoff of service by a utility company; a third affirmative defense that the statutory duty of the Commissioner of Social Services is solely to guarantee only future payments to the utility company, and a fourth affirmative defense that Bates is under no duty under regulations 18 NYCRR 352.7(g)(5) and 18 NYCRR 372.2 of the State regulations to provide plaintiff with a grant of emergency assistance equal to the total amount of arrears owed by plaintiff to Con Ed.
The primary source of the issues in dispute in the action herein arise from the provisions of the Transportation Corporations Law of the State of New York. The defendant, Con Ed, is a corporation organized under the provisions of that law and furnishes services under section 65 of the Public Service Law. To the extent that the provisions of the Transportation Corporations Law comply with constitutional requirements, Con Ed must render its services in accordance with the terms of the statutory provisions. Two sections of that law are the nub of the legal controversy in the action.
Broadly stated, section 12 of the Transportation Corporations Law relates to applicants and applications for services provided by a utility such as Con Ed. Section 15 of the Transportation Corporations Law relates generally to those circumstances under which a utility company such as Con Ed can terminate service.
Section 12 of the Transportation Corporations Law was amended by chapter 189 of the Laws of 1965, by including a clause excepting from the general provisions of that section, a recipient of public assistance and then adding the following language: "In the case of an application pursuant to this section by an owner or occupant of a dwelling who is in receipt of public assistance, such gas and electricity as may be required by such person shall be supplied by the corporation during such period as such person continues to receive public assistance notwithstanding that there may be monies due from such person to the corporation for any period prior to such application in which such person was not in receipt of public assistance, and payment of such monies due shall not be required by the corporation as a condition precedent to the supplying of gas or electricity; provided, however, that this *592 exception shall not include any monies that may be due from such person to the corporation for gas and electricity furnished such person for residential use in the four month period immediately preceding the month of such application in the same dwelling for which such person is applying for gas or electricity; provided further that the public welfare official granting such public assistance shall guarantee payment, to the corporation, for all gas and electricity which may thereafter be supplied by the corporation to the applicant while he is in receipt of public assistance.”
Section 15 of the Transportation Corporations Law was amended by chapter 495 of the Laws of 1967, which added the following subdivision to the section: "2. It shall be unlawful for any gas or electric corporation to discontinue the supply of gas or electricity to any person or persons receiving public assistance, for non-payment of bills rendered for service, if the payment for such service is to be paid directly by the department of social welfare or the public welfare official in such locality.”
It is the court’s opinion that these sections must be construed separately. There is no legislative intent apparent from the plain language used in these amendments upon which a conclusion of a joint interpretation to create a pattern of legislative direction can be construed. Section 12 relates to applications for service and for the reasons hereinafter set forth, does not apply to the facts of the instant case. Section 15 relates to discontinuance of service and will be discussed by the court.
The amendment to section 12 above set forth relates to an application for service made by a recipient of public assistance and states that the existence of a pre-existing debt incurred while the application was not on public assistance cannot serve as a bar. The amendment goes on to require that four months of the arrears immediately preceding the application are not intended to be covered by the amendment, the implication being clear that such four months of arrears would be paid by the public welfare official charged with such duty and upon the further understanding that the public welfare official would guarantee payment for all services rendered thereafter to the recipient of public assistance.
Applying the foregoing comments to the facts of the instant case, the conclusion must be reached that the provisions of section 12 as amended, do not apply to the instant case. In *593 this case, no application for service was refused. On the contrary, service was rendered by the defendant utility immediately upon the application of the plaintiff. Further, under the 1965 amendment, the arrears referred to are to be incurred during the period in which the applicant was not receiving public assistance. In the instant case, the applicant was on public assistance during the full period during which arrears accrued. Finally, the accrued arrears were primarily incurred in a different dwelling than the present dwelling of petitioner. The court therefore reaches the conclusion that the provisions of section 12 as amended of the Transportation Corporations Law, do not relate, to nor can they be applied to the facts of the instant case.
The court therefore focuses its attention upon the provisions of subdivision 2 of section 15 of the Transportation Corporations Law as amended in the matter above set forth. The amendment limits the right of the utility to terminate service for nonpayment of bills for such services rendered to a person receiving public assistance. Contrary to the provisions of section 12 above discussed, the unpaid bills need not be incurred while the recipient was not on public welfare assistance. However, it has been held that a public utility such as Con Ed, as a condition of continued service may require payment by a recipient of such service of unpaid bills not only at the present address of such recipient, but also at the former address of such recipient (Dworman v Consolidated Edison Co. of N. Y., 26 AD2d 535). No reimbursement to Con Ed for any period preceding the date of intended cutoff of service is set forth, nor is there any express language which would limit the liability of the public welfare official to payment of prospective services only. If this section were to be construed to require the continuation of service by the utility on the sole premise of prospective payment, the limitation of the utility to a sole remedy for the unpaid arrears of a civil judgment whose collectability would be extremely dubious, if not nil, would be, in this court’s opinion, a deprivation of property without due process. A plain consequence of such a theory would be the passing along of the burden of such unpaid bills to other users of the services of the utility as uncollectable debts and would cause such other users, in effect, to pay for services which they have not and would not receive.
By reason of the foregoing, the court determines that the language of subdivision 2 of section 15 of the Transportation *594 Corporations Law, requires that the local public welfare official, if service is to be continued to a recipient of public assistance, pay all arrears owing by the recipient of public assistance.
The court now turns to the issue of whether or not under the existing statutory authority, both State and Federal, and under the rules and regulations adopted by the State Commissioner of Social Services, authority exists for the making of such payment of arrears by the local public welfare official.
The issue presented by the facts as above presented is whether or not the special relief extended to the petitioner herein was an "advance allowance” under State regulations (18 NYCRR 352.7 [g] [5]) which thereby precluded petitioners from receiving such relief as "emergency assistance” under the Federal and State statutes (US Code, tit 42, § 606, subd [e], par [1]; Social Services Law, § 350-j).
Subdivision 3 of section 350-j. of the Social Services Law provides for emergency assistance to needy families with children in accordance with the regulations of the department, for children who are without available resources and when such assistance is necessary to avoid destitution. Once the conditions of that subsection have been met, no further qualifications may be added by the regulations or by the commissioner. The sole fault charged to the petitioner is a claimed inability to handle cash funds which has eventuated into a "vouchered” method of payment of utility bills. This lack of management skills does not disqualify the petitioner from an emergency grant under the provisions of the Social Services Law. The stoppage of utility services would result in a loss of proper cooking and heating facilities, which constitute destitution under provisions of section 350-j of the New York Social Services Law. (Matter of Lee v Sipprell, 47 AD2d 593; Matter of Bryant v Lavine, 49 AD2d 673.)
The State commissioner, in his decision, after a fair hearing dated March 24, 1976, specifically pointed out that section 131 of the Social Services Law sets as the obligation of each local . social services agency, the necessity of providing for those who are unable to maintain themselves and pointed out that the assurance of continued access of utility services is an essential element of maintenance within the meaning of that section. The decision then went on to state it was the obligation of *595 each agency to take any steps necessary to prevent a cessation of such services or to effectuate a restoration thereof upon a shutoff.
By reason of the foregoing, the court holds that since the funds required to be advanced are in the category of an emergency assistance grant, 18 NYCRR 352.7(g)(5) relating to advance allowance for payment of utilities with recoupment provisions, is not applicable. The court therefore directs that the Commissioner of Social Services of Westchester County pay to Consolidated Edison the full amount of the arrears owed by petitioner for services rendered to her by the said Consolidated Edison Company Inc. and that, in order to avoid future shutoffs, the said commissioner continue to make payment to Con Ed for future services through the vouchered payment technique adopted by the said commissioner. (See Ingram v Fahey, 78 Misc 2d 958, 961).
That branch of petitioner’s motion which would require the respondent Levine to advise all local social services districts in the State that emergency assistance must be provided to destitute recipients who are threatened with a shutoff of utility services, is denied. (See Ingram v Fahey, supra, p 961.)
Accordingly, as to the article 78 proceeding, the petitioner’s motion for summary judgment is granted to the extent of directing that the Commissioner of Social Services of Westchester County pay to Con Ed the full amount of the arrears owing by petitioner pursuant to section 350-j of the Social Services Law, but is denied in all other respects.
As to the action, plaintiff’s motion for summary judgment is granted to the extent that Con Ed, on both the payment of the arrears and the guarantee of future charges by the local commissioner, is directed to continue to furnish services to the plaintiff. Defendant Con Ed’s cross motion for summary judgment versus the local commissioner for the amount of the arrears is granted (as well as a determination that the local commissioner is under a duty to guarantee payment to Con Ed for all services furnished by said defendant to plaintiff while plaintiff was a recipient of public assistance).
In all other respects, the motions and cross motions of the respective parties are denied.