OPINION OF THE COURT
Lawrence E. Kahn, J.
This litigation seeks a judgment declaring that an appropri *553 ation contained in the 1990-1991 State operations budget is unconstitutional. The challenged appropriation diverts "Special Traffic Options Program for Driving While Intoxicated” (STOP DWI) revenues to cover shortfalls in the operating budget of the Department of Motor Vehicles (DMV). Specifically, the appropriation provides in pertinent part that the Comptroller is directed to withhold a maximum of 2% of the revenues received in any court by counties participating in the STOP DWI, for costs incurred by the DMV relating to the program. The appropriation further allows expenditure of up to $500,000 of these funds for obligations incurred prior to April 1, 1990.
The court has heretofore signed an order granting amicus curiae status to the Honorable Clarence D. Rappleyea, Minority Leader of the New York State Assembly.
The STOP DWI program was enacted by the New York State Legislature in 1981 to provide for the creation and funding of such programs throughout the State at the local option of each county. As an incentive therefor, section 1678-a (now § 1197) was added to Vehicle and Traffic Law to provide that when a county established such a program it would receive fines and forfeitures collected within the county that resulted from alcohol-related driving offenses. Every county in the State of New York has established a STOP DWI program. The submissions presently before the court indicate that local STOP DWI programs will be subjected to serious financial depletions as the result of this attempt to subsidize the budget of the Department of Motor Vehicles.
Plaintiffs challenge the appropriation on constitutional grounds, asserting that it violates article V, § 1 of the NY Constitution, which provides that the Legislature shall assign the Comptroller no administrative duties expect those that are incidental to the performance of his constitutional functions to audit all vouchers before payment and all official accounts, to audit the accrual and collection of all revenues and receipts, and to prescribe necessary methods of accounting. Plaintiffs also assert that the appropriation violates article III, § 1 of the NY Constitution, which prohibits the Legislature from delegating its lawmaking power without providing a guide for the exercise thereof. Finally, plaintiffs assert that the appropriation runs afoul of the home rule principles contained in article IX of our NY Constitution.
Initially, defendants question plaintiffs’ standing to main *554 tain this litigation. Upon that issue, this court will be guided by the Court of Appeals decision in Matter of Roman Catholic Diocese v New York State Dept. of Health (66 NY2d 948, 951), and "assume, without deciding,” that plaintiffs have standing, in order that the proceeding go forward for a determination on the merits.
The court has reviewed all of the submissions before it, including the legislative intent in the enactment of the original STOP DWI program in 1981. There is no question that as initially enacted, the Legislature expressly intended that all fine moneys collected by participating counties be returned for local use. Indeed, all attempts by other State agencies to obtain such funds were thwarted until the appropriation which is challenged hereby.
Plaintiffs’ first constitutional challenge to the appropriation argues that the Legislature is prohibited from assigning the Comptroller administrative duties except those which may be incidental to the performance of his constitutional mandates such as auditing and accounting functions of State money, or the supervision of accounts of political subdivisions.
Defendants acknowledge that the Legislature is constitutionally prohibited from imposing administrative duties on the Comptroller unless they are incidental to the performance of his constitutionally mandated fiscal duties. However, they assert that the challenged appropriation "merely requires the allocation of funds in the state general fund between the state and the localities prior to the payment to the localities.” Were that the case, defendants would be correct in asserting that the appropriation does not supersede the constitutional prohibition against imposing administrative duties on the Comptroller. However, a close reading of the language of the appropriation simply does not support this conclusion.
The appropriation provides, in pertinent part, that the Comptroller is authorized to withhold "up to two percent” of the moneys received in any court pursuant to the STOP DWI program for costs incurred by the Department of Motor Vehicles in carrying its responsibilities with respect to such programs. Most significantly, the wording of the legislation is permissive, not mandatory. It does not direct the Comptroller to merely allocate funds between the State and localities. Rather, it specifically invests the Comptroller with the discretion to collect any amount he sees fit, from nothing, to a maximum of 2% of the revenues received in any court within *555 participating counties. It does not mandate withholding from all such courts. Thus, the Comptroller’s purported discretion is twofold. There is no "ministerial allocation” with respect to either the amount collected or the counties affected. Finally, the appropriation offers no direction for the Comptroller to determine precisely what are the costs incurred by DMV in order to determine the 2% cap.
The Court of Appeals has upheld these limitations, affirming that "the Legislature was precluded from assigning the Comptroller any administrative duties, save those incidental to the performance of the Comptroller’s constitutional functions.” (Patterson v Carey, 41 NY2d 714, 724.) Thus, the court invalidated a statute which purported to "mandate that the Comptroller exercise his supervision over a particular topic in a particular manner.” (Supra, at 724.)
The history of the 1925 constitutional amendment which amended article V, § 1 reveals that the impetus therefor was an attempt to limit and define the constitutional parameters of the Office of Comptroller. The New York State Reconstruction Commission on Retrenchment and Reorganization specifically found that there were serious defects in existing constitutional provisions relating to the Office of Comptroller, which had left the Legislature practically a free rein in setting the parameters in the assignment of duties to the office. The Commission recommended that the Office of State Comptroller be constitutionally restricted to eliminate extraneous executive, budgetary and taxing functions in favor of those duties relating to the auditing of vouchers and official accounts, auditing the accrual and collection of revenues and receipts, and functions pertaining to State funds and State debts. Viewed in this historical perspective, the challenged appropriations provision would clearly be a step back to the era preceding the 1925 constitutional amendment.
Plaintiffs shall be entitled to a judgment declaring that the appropriations provision of the 1990-1991 State operations budget which authorizes the Comptroller to collect, withhold and receive and deposit to the credit of the general fund up to 2% of revenues received in any court pursuant to section 1197 of article 31 of the Vehicle and Traffic Law for costs incurred by the Department of Motor Vehicles in carrying out its responsibilities pursuant to such law is unconstitutional as a violation of article V, § 1 of the NY Constitution.
Having found that the provision violates article V, § 1, the *556 court has not rendered any determination with respect to the other constitutional questions raised by the submissions. Further, the court has rendered no determination with respect to plaintiffs’ application for injunctive relief. At this juncture, the court shall presume that the parties shall be guided accordingly, and in the absence of a specific showing of a need therefor, such application is premature.